UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA,

Plaintiff,

v. Case No.: 2:25-cv-934-SPC-KRH

HEMMER CONSTRUCTION, INC.; DANIEL J. HEMMER; and TERESA D. HEMMER,

Defendants.

---

**OPINION AND ORDER**

Before the Court is Plaintiff Travelers Casualty and Surety Company of America's ("Travelers") Motion for Preliminary Injunction. (Doc. 35). Defendants Hemmer Construction, Inc. ("Hemmer Construction"); Daniel J. Hemmer; and Teresa D. Hemmer (collectively, "Defendants" or "Indemnitors") responded in opposition (Doc. 42), and Travelers replied (Doc. 45). For the below reasons, the Court grants the motion.

**Background**

Travelers is an insurance company that issues construction bonds and stands as a surety for contractors. Hemmer Construction is a general contractor company performing various construction projects in Southwest

Florida. On June 4, 2019, Defendants and Travelers entered into a General Agreement of Indemnity ("GAI") (Doc. 1-2) as a condition for issuance of future performance bonds.

The GAI's terms are typical. Defendants agree to indemnify Travelers for any loss[1] that Travelers incurs in connection with any bonds. (Doc. 1-2 ¶ 3). And the GAI requires Indemnitors to, upon Travelers' demand, deposit collateral security in the amount Travelers deems necessary to discharge all loss or anticipated loss. (*Id.* ¶ 5). The GAI also requires Indemnitors to furnish certain records, including financial records, for review upon Travelers' demand. (*Id.* ¶ 10)

In January 2022, Hemmer Construction began working on a construction project as the general contractor. Per the construction contract, Hemmer Construction was required to obtain performance bonds for the project. That's where Travelers came in. Travelers issued payment and performance bonds for the project, naming Hemmer Construction as the principal and Genesis IPV Properties LLC ("Genesis") as obligee.[2] (Doc. 1-3).

[1] The term "Loss" is broadly defined as "[a]ll losses and expenses of any kind or nature, including attorneys' and other professional fees, which [Travelers] incurs in connection with any Bond or this Agreement[.]" (Doc. 1-2 ¶ 1).

[2] The obligee subsequently changed. (Docs. 1-3, 1-4). But for ease of reference, the Court refers to the obligee as Genesis throughout this Order.

The bonds guaranteed Hemmer Construction's performance under the construction contract and payment obligations.

In July 2023, Genesis declared Hemmer Construction in default of the construction contract and terminated it. Genesis then demanded that Travelers honor its obligations under the bonds to perform the contractual work and to resolve any claims for non-payment asserted by subcontractors or suppliers. In March 2024, Travelers entered into a Takeover Agreement with Genesis, under which it agreed to complete the project using its own general contractor.

Travelers determined that its losses and anticipated losses totaled $15,522,641. It established a loss reserve in that amount. And per the terms of the GAI, it demanded that Indemnitors provide that amount as collateral security. (Doc. 1-7). Indemnitors have refused to comply. On multiple occasions, Travelers also demanded access to Indemnitors' financial records.

Travelers filed this action against Indemnitors, asserting claims for breach of contract (count I), specific performance (count II), common law indemnity (count III), exoneration (count IV), and quia timet (count V). (Doc. 1). Indemnitors answered the complaint, asserting additional facts and raising several affirmative defenses. (Doc. 16).

Travelers now moves for a preliminary injunction requiring Indemnitors to post $15,522,641 in cash as collateral security, prohibiting all transfers and

encumbrances of Indemnitors' assets until the collateral is posted, and compelling Indemnitors to provide full access to their books, records, and accounts. (Doc. 35).

## Legal Standard

A "preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citation omitted). To obtain a preliminary injunction, Travelers "must establish that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Grayson v. Comm'r, Ala. Dep't of Corr.*, 121 F.4th 894, 896 (11th Cir. 2024). "Failure to show any of the four factors is fatal[.]" *Id.* (quoting *Am. C.L. Union of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.*, 557 F.3d 1177, 1198 (11th Cir. 2009)). Mandatory injunctions—such as that requested here—are "particularly disfavored," and the burden on the movant is even higher. *Powers v. Sec'y, Fla. Dep't of Corr.*, 691 F. App'x 581, 583 (11th Cir. 2017).

## Analysis

Countless cases addressing similar scenarios have granted preliminary injunctions requiring the indemnitors to post the collateral security bond. *See, e.g.*, *Argonaut Ins. Co. v. CM Glazing, LLC*, No. 6:23-CV-1378-CEM-LHP, 2024 WL 2125152, at *9 (M.D. Fla. May 9, 2024) ("Actions brought by sureties to

enforce collateral security clauses against indemnitors are precisely the rare instances in which the facts and law are clearly in favor of the moving party."); *Travelers Cas. & Sur. Co. of Am. v. Design Build Eng'rs & Contractors, Corp.*, No. 6:14-CV-1636-ORL-31, 2014 WL 7274803, at *7 (M.D. Fla. Dec. 22, 2014); *Travelers Cas. & Sur. Co. of Am. v. Indus. Com. Structures, Inc.*, No. 6:12-CV-1294-ORL-28, 2012 WL 4792906, at *3 (M.D. Fla. Oct. 9, 2012). But because it must, the Court addresses each of the Rule 65 elements in turn below.

**I. Likelihood of Success on the Merits**

Little effort is needed to conclude Travelers has shown a substantial likelihood of success on its breach of contract claim. Indemnitors do not dispute the GAI is valid and enforceable. Nor do they dispute the GAI requires them to post the collateral bond or that they have failed to do so. Nor can they. The terms of the GAI are clear. Indemnitors agreed to "exonerate, indemnify and save [Travelers] harmless from and against all Loss" and "to deposit with [Travelers], upon demand, an amount determined by [Travelers] sufficient to discharge any Loss or anticipated Loss." (Doc. 1-2 ¶¶ 3, 5). "Given this clear language of the contract, it is likely that Plaintiff will succeed in showing that Defendants will have to indemnify and collateralize Plaintiff." *See Philadelphia Indem. Ins. Co. v. Therma Seal Roof Sys., LLC*, No. 21-80306-CIV, 2022 WL 1664183, at *3 (S.D. Fla. Mar. 9, 2022).

Indemnitors offer little resistance to this general conclusion. Although they dispute the $15 million figure Travelers demands as collateral security, the GAI provides that "[a]n itemized, sworn statement by an employee of [Travelers] . . . shall be prima facie evidence of the propriety, amount and existence of Indemnitors' liability," and that such "[a]mounts due to [Travelers] shall be payable upon demand." (Doc. 1-2 ¶ 3). Travelers provides an itemized statement of loss (Doc. 35-10), which is incorporated into an affidavit from Timothy Snyder, Travelers' senior board member (Doc. 35-1).[3] So the contractual terms defeat this argument. Besides, "[t]he salient inquiry at this stage is not whether the underlying claims and expenses were valid, but only whether the Signatories had to post collateral in accord with the GIA." *Philadelphia Indem. Ins. Co. v. Quinco Elec., Inc.*, No. 6:22-CV-98-GAP-EJK, 2022 WL 1230110, at *3 n.7 (M.D. Fla. Apr. 12, 2022).

Rather than allocate much effort to disputing Travelers' prima facie claim, Indemnitors instead focus on various affirmative defenses that they believe impede Travelers' likelihood of success. Indemnitors argue that Travelers has not shown a likelihood of success overcoming Indemnitors' affirmative defenses, which precludes a preliminary injunction. (Doc. 42). But Indemnitors misapply the burden.

[3] While Indemnitors complain of a purported discrepancy in the figures (Doc. 42), Travelers clarified the confusion in its reply. (Doc. 45 at 13–14).

Indemnitors must establish a likelihood of success as to their own affirmative defenses. Both the Supreme Court and Eleventh Circuit have explained that "the burdens at the preliminary injunction stage track the burdens at trial." *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 429 (2006); *Swain v. Junior*, 958 F.3d 1081, 1092 (11th Cir. 2020). Indemnitors carry the burden at trial for their affirmative defenses. *Naval Logistic, Inc. v. M/V Fam. Time*, No. 23-22379-CIV, 2024 WL 3691535, at *3 (S.D. Fla. Aug. 6, 2024) ("[T]he defendant bears the burden of proof on his affirmative defenses at trial." (citing *Thorsteinsson v. M/V Drangur*, 891 F.2d 1547, 1551 (11th Cir. 1990)); *see also In re Rawson Food Serv., Inc.*, 846 F.2d 1343, 1349 (11th Cir. 1988) ("The party asserting an affirmative defense usually has the burden of proving it." (cleaned up and citation omitted)). So Indemnitors must demonstrate their likelihood of success on such defenses. They fail to do so.

Indemnitors raise several affirmative defenses, but the relevant one here is bad faith.[4] (Docs. 16, 42). They argue Travelers ignored evidence that would

[4] Indeed, bad faith is the only defense available to Indemnitors. The GAI gives Travelers discretion to settle a claim under the bonds. (*See* Doc. 1-2 ¶ 4 (Travelers "shall have the right, in its sole discretion, to determine for itself and Indemnitors whether any claim, demand or suit brought against [Travelers] or Indemnitor in connection with or relating to any Bond shall be paid, compromised, settled, tried, defended, or appealed, and its determination shall be final binding and conclusive upon the Indemnitors[.]")). "[W]here—as here—an indemnity agreement gives the surety discretion to settle a claim brought under a bond, the only defense to indemnity for such a settlement is bad faith on the part of the surety." *Great Am. Ins. Co.*

preclude Indemnitors' liability, *i.e.*, Genesis' own breach of the construction contract and Travelers' expert evaluations as to the costs and progress of the project; intentionally wasted resources and delayed the project; intentionally excluded Indemnitors from participating in and performing the completed project; prevented Hemmer Construction from completing the project despite knowing it was willing and able to do so; spending four times the cost to complete the project; and intentionally withholding certain documentation. (Doc. 42 at 23–24). The defense fails on multiple grounds.

At the outset, Indemnitors' bad faith defense is irrelevant at this stage. Collateralization and indemnification are distinct concepts. The sole issue before the Court is whether Travelers is entitled to collateral security; Travelers does not seek indemnification in its motion for preliminary injunction. And courts have held that "[w]hile issues of bad faith may be relevant to Plaintiff's claim for indemnification under the [Indemnity] Agreement, they are not relevant to Plaintiff's contractual right to collateral security." *Allied World Speciality Ins. Co. v. Lawson Inv. Grp., Inc.*, No. 6:15-CV-1397-ORL-37TBS, 2016 WL 695980, at *3 n.8 (M.D. Fla. Feb. 22, 2016); *see also Safeco Ins. Co. of Am. v. Hirani/MES*, JV, 480 F. App'x 606, 608 (2d Cir. 2012) (rejecting the defendants' argument that the district court failed to

---

*v. Brewer*, No. 6:16-CV-63-ORL-37KRS, 2017 WL 8314689, at *7 (M.D. Fla. Aug. 23, 2017) (cleaned up and citation omitted).

consider their bad faith defense because "Defendants conflate collateral security with an award of indemnification" and "[t]he District Court was entitled to award Safeco specific performance on its contractual right to collateral security and ignore the defenses related to Safeco's separate right to indemnification, as to which issues of bad faith may be relevant"). Because Indemnitors' allegations of bad faith do not implicate Travelers' right to security, the defense is irrelevant, and the likelihood of success inquiry should end here.[5]

Regardless, even considering the bad faith defense, Indemnitors fail to get it off the ground because they have not posted the collateral security. Courts routinely hold that "defendants' failure to post collateral precludes the defendants' relying on the defense of bad faith." *United States Sur. Co. v. Best Constr. Drywall Servs., Inc.*, No. 8:16-CV-3102-T-23TGW, 2018 WL 2267109, at *2 (M.D. Fla. May 17, 2018); *see also Devs. Sur. & Indem. Co. v. Renew Maint. & Constr., Inc.*, No. CV 1:17-00495-KD-N, 2018 WL 6185999, at *7 (S.D. Ala. Oct. 5, 2018) ("[F]ederal courts within the Eleventh Circuit have held that a bad faith defense is not available to a principal/indemnitor who fails to post collateral upon demand under an indemnification agreement."); *Liberty Mut.*

[5] Because no party initially briefed this issue, the Court ordered the parties to provide supplemental briefing. (Doc. 50). The Court found Indemnitors' response (Doc. 51) unconvincing. Even so, the Court recognizes that authority within the Eleventh Circuit on this point is scarce, so the Court briefly addresses the bad faith defense out of an abundance of caution.

*Ins. Co. v. Aventura Eng'g & Const. Corp.*, 534 F. Supp. 2d 1290, 1316 (S.D. Fla. 2008) ("[T]his failure to comply with the clear terms of the Indemnity Agreement defeats, as a matter of law, Defendants' claim of bad faith.").[6] Thus, Indemnitors' failure to post the security is fatal to its defense.[7]

Although the Court could stop here, it is also worth noting that Indemnitors fail to demonstrate bad faith. "To show bad faith, an indemnitor must show that the surety acted with 'deliberate malfeasance,' which is an intentional wrongful act that the actor has no legal right to do or any wrongful conduct which affects, interrupts, or interferes with the performance of official legal duty." *United States Sur.*, 2018 WL 2267109, at *2 (cleaned up and citation omitted). "[A] lack of diligence or negligence is not the equivalent of bad faith, and even gross negligence is not the same as bad faith." *Liberty Mut.*, 534 F. Supp. 2d at 1316 (citation omitted).

To support their bad faith defense, Indemnitors broadly cite their answer and affirmative defense along with an affidavit by Daniel Hemmer "and attached exhibits." (Doc. 42 at 24). They do not cite a particular exhibit, let alone a pin cite within the exhibit. This is insufficient. *See Chavez v. Sec'y,*

[6] Indemnitors ask the Court to disregard this line of cases as "poor jurisprudence." (Doc. 42 at 28). But the weight of supporting authority suggests otherwise.

[7] It seems counterintuitive that Indemnitors' failure to post the collateral security defeats its bad faith defense when Indemnitors raise the defense to avoid posting the security in the first instance. But this dichotomy only reinforces the principle the Court outlines above that bad faith is an indemnification consideration, not collateral security.

*Fla., Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) ("[D]istrict court judges are not required to ferret out delectable facts buried in a massive record[.]"); *Lowrance v. Berryhill*, No. 4:18-CV-89, 2019 WL 1085187, at *1 (S.D. Ga. Mar. 7, 2019) (explaining "judges are not archaeologists. They need not excavate masses of papers in search of revealing tidbits—not only because the rules of procedure place the burden on the litigants, but also because their time is scarce." (citation omitted)).

With no evidence Travelers acted "fraudulently or with ill-will," Indemnitors' bad-faith defense falls flat.[8] *Liberty Mut.*, 534 F. Supp. 2d at 1316; *Devs. Sur. & Indem. Co. v. Hansel Innovations, Inc.*, No. 8:14-CV-425-T-23TBM, 2014 WL 2968138, at *6 (M.D. Fla. July 1, 2014) (rejecting bad faith defense because "there is no evidence of such a self-interested settlement").

One final point. As it pertains to Travelers' demand to access Indemnitors' books and accounts, Indemnitors do not respond. So the Court considers this point conceded.[9] *See Jones v. Bank of Am., N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014) ("A party's failure to respond to any portion or claim in a motion indicates such portion, claim or defense is unopposed.").

[8] To be sure, a review of the Hemmer affidavit and Indemnitors' exhibits does not demonstrate deliberate malfeasance.

[9] The same is true for the remaining preliminary injunction factors.

In sum, Travelers demonstrates a likelihood of success on the merits of its claim, and Indemnitors fail to demonstrate a likelihood of success on their affirmative defense. So Travelers satisfies the first element.[10]

## II. Irreparable Harm

This element is easily satisfied. "Courts in the Middle District of Florida . . . have recognized that the nature of the injury in collateral security provision cases is the lack of collateralization while claims are pending, and nothing can remedy that injury after the fact." *Philadelphia Indem.*, 2022 WL 1230110, at *3; *see also Philadelphia Indem.*, 2022 WL 1664183, at *4 (explaining "courts have held that there is an inherent lack of a legal remedy when a surety seeks to enforce" a collateral security provision). "Absent an injunction, [Travelers] would suffer the harm of having its rights under the Indemnity Agreement effectively nullified. [Travelers] would be unsecured against claims and loss while Defendants would be free to sell, transfer, or conceal their assets to avoid their obligations." *Devs. Sur. & Indem. Co. v. Bi-Tech Const., Inc.*, 964 F. Supp. 2d 1304, 1310 (S.D. Fla. 2013). Indeed, "[i]f the Court did not enforce the

[10] At various points, Indemnitors argue that issues of material fact exist, which precludes Travelers' entitlement to relief. (Doc. 42 at 23). Indemnitors appear to confuse the preliminary injunction standard with that of summary judgment. *See Noramco Shipping Corp. v. Bunkers Int'l Corp.*, No. 6:02CV515-ORL-22DAB, 2003 WL 22594419, at *10 (M.D. Fla. Apr. 30, 2003) ("The standard for granting a Motion for Preliminary Injunction is entirely different ('substantial likelihood of success on the merits') than the standard for granting summary judgment (a lack of any 'genuine issue of material fact').").

[collateral security] provision, it would be rendered meaningless." *Travelers Cas.*, 2014 WL 7274803, at *5.

Indemnitors' arguments to the contrary are unpersuasive. They argue that Travelers cannot show irreparable harm because monetary damages can make it whole.[11] (Doc. 42 at 13–14). But another court in this District rejected this argument because "the nature of the injury in collateral security provision cases is the lack of collateralization while claims are pending, and nothing can remedy that injury after the fact." *Travelers Cas.*, 2012 WL 4792906, at *3. The Court agrees and likewise rejects the argument.

Indemnitors also argue Travelers has not shown Indemnitors are in financial distress or secreting assets that would render the lack of the collateral deposit irreparable. But this argument has also been rejected. *See id.* (rejecting the same argument because "sureties are ordinarily entitled to specific performance of collateral security clauses because the surety bargained for a collateral security clause to protect it from the impending risks of liability" (cleaned up and citations omitted)).

Finally, Indemnitors highlight Travelers' delay in seeking injunctive relief. It is true that "a party's failure to act with speed or urgency in moving

---

[11] Indemnitors rely largely on *Great Am. Ins. Co. v. Fountain Eng'g., Inc.*, No. 15-CIV-10068-JLK, 2015 WL 6395283 (S.D. Fla. Oct. 22, 2015), which rejected the contention that nothing can remedy the lack of collateralization because a monetary judgment was available. (Doc. 42 at 13). But other courts have disagreed with this holding. *See, e.g.*, *Philadelphia Indem.*, 2022 WL 1664183, at *5 (disagreeing with *Great Am. Ins.*'s holding).

for a preliminary injunction necessarily undermines a finding of irreparable harm." *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016). But such a delay is not necessarily fatal. *See id.* ("A delay in seeking a preliminary injunction of even only a few months—though not necessarily fatal—militates against a finding of irreparable harm.").

Faced with a similar circumstance, a fellow district court in this Circuit disregarded the delay in seeking injunctive relief and found irreparable harm. In *Aegis Sec. Insurance Company v. MW Indus. Services, Inc.*, the surety waited thirty-three months after its initial demand for the collateral and twenty-three months after it initiated the lawsuit to move for injunctive relief. No. 1:23-CV-374-TFM-C, 2026 WL 880606, at *15 (S.D. Ala. Mar. 31, 2026). Nevertheless, the court found irreparable harm because "the numerous opinions in which courts have enforced specific performance of collateral security agreements on a motion for preliminary injunction and the lack of legal remedy for [surety's] equitable claim to collateralization weigh in favor of a finding of irreparable harm and outweigh the negative factors." *Id.* at *16.

The Court finds *Aegis* persuasive and agrees with its reasoning. While Travelers' delay is problematic (despite its explanation), it is not fatal. And the weight of authority indicating a surety will suffer irreparable harm if the collateral security provision is not enforced weighs in favor of such a finding here.

## III. Balance of Harms and Public Interest

The final two factors weigh in Travelers' favor. Indemnitors' only argument on these factors pertains to Travelers' purported bad faith. (Doc. 42 at 32–33). But the Court already disposed of the bad faith argument. And "[c]ourts often find that the balance of harms favors the surety because it is only asking the Court to require the defendants to do that which the defendants contractually agreed to do." *Argonaut Ins.*, 2024 WL 2125152, at *8 (cleaned up and citations omitted). Likewise, "[t]he public interest is served by enforcing the terms of the contract and by protecting the solvency of sureties whose work is a benefit to the public." *Id.* (citation omitted). So the balance of harms and public interest favor Travelers.

## IV. Hearing

The Court declines to hold an evidentiary hearing. An evidentiary hearing "is not always required before the issuance of a preliminary injunction[.]" *Four Seasons Hotels And Resorts, B.V. v. Consorcio Barr, S.A.*, 320 F.3d 1205, 1211 (11th Cir. 2003). It is only "where facts are bitterly contested and credibility determinations must be made to decide whether injunctive relief should issue, [that] an evidentiary hearing must be held." *Id.* (citation omitted). "Where conflicting factual information places in serious dispute issues central to a party's claims and much depends upon the accurate presentation of numerous facts, the trial court errs in not holding an

evidentiary hearing to resolve these hotly contested issues." *Id.* (cleaned up and citation omitted).

An evidentiary hearing is not warranted here. The only factual disputes pertain to Indemnitors' bad faith defense and the amount of the collateral security, both of which are irrelevant at this stage and otherwise fail as a matter of law. Conversely, there are no factual disputes over the sole inquiry presented: whether the GAI requires Indemnitors to post collateral security and provide access to their books. As such, no hearing is necessary.

**V. Bond**

Federal Rule of Civil Procedure 65(c) provides that a court may issue a preliminary injunction "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." The amount of security required is a matter within the trial court's discretion, "and the court may elect to require no security at all." *BellSouth Telecomm., Inc. v. MCIMetro Access Transmission Servs., LLC*, 425 F.3d 964, 971 (11th Cir. 2005). Given the nature of this action, the Court will not require the posting of a bond as security.

Accordingly, it is

**ORDERED:**

Travelers' Motion for Preliminary Injunction (Doc. 35) is **GRANTED**.

a. On or before **August 7, 2026**, Defendants, jointly and severally, must post **$15,522,641** in cash with Travelers as security against incurred and anticipated loss in connection with the subject bonds.

b. Defendants are preliminary enjoined from transferring, selling, disposing of, or encumbering any of their assets until they collectively post the $15,522,641 in collateral.

c. On or before **August 7, 2026**, Defendants must provide Travelers with full access to their books, records, and accounts for the purpose of examining and copying such records.

**DONE** and **ORDERED** in Fort Myers, Florida on July 28, 2026.

Sheri Polster Chappell

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record